UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

ALFRED ROBINSON,

                    Petitioner,

         vs.

HAROLD GRAHAM,[1] Superintendent,
Auburn Correctional Facility,

                    Respondent.

No. 9:07-cv-01107-JKS

MEMORANDUM DECISION

Petitioner Alfred Robinson, a state prisoner proceeding *pro se*, has filed a petition for

habeas corpus relief under 28 U.S.C. § 2254.  Robinson is currently in the custody of the New

York Department of Correctional Services, incarcerated at the Auburn Correctional Facility.

Respondent has answered, and Robinson has replied.

## I.  BACKGROUND/PRIOR PROCEEDINGS

After a jury trial, Robinson was convicted in the Onondaga County Court of Attempted

Murder in the First Degree (N.Y. Penal Law §§ 110/125.27[1]), Tampering with a Witness in the

First Degree (N.Y. Penal Law § 215. 13[1]), Assault in the First Degree (N.Y. Penal Law

§ 120.10[1]), Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law

§ 265.03[2]), Assault in the Second Degree (N.Y. Penal Law § 120.05[2]), Criminal Possession

of a Weapon in the Third Degree (N.Y. Penal Law § 265.02[1]), Bribing a Witness (N.Y. Penal

Law § 215.00), Tampering with a Witness in the Third Degree (Penal Law § 215.11[1]), and

---

[1] Harold Graham, Superintendent, Auburn Correctional Facility, is substituted for Brian
Fischer, Superintendent, Auburn Correctional Facility.

Tampering with a Witness in the Fourth Degree (N.Y. Penal Law § 215.10).  The Onondaga

County Court sentenced Robinson to an aggregate prison term of 35½ years to life.  Robinson

timely appealed his conviction to the Appellate Division, Third Department, which affirmed his

conviction in a reasoned decision, and the New York Court of Appeals denied leave to appeal on

July 21, 2006.[2]  Robinson timely filed his petition for relief in this Court on October 12, 2007.

## II.  GROUNDS RAISED/DEFENSES

In his petition Robinson raises six grounds:  (1) he was denied the effective assistance of

counsel; (2) he was denied his right to be present at all material stages of trial; (3) his inculpatory

statement to the police was involuntary; (4) the evidence was insufficient to support the

conviction of first-degree assault; (5) the prosecutor made improper comments during

summation; and (6) he was denied a fair trial and due process (cumulative error).  Respondent

has not asserted any affirmative defenses.[3]

## III.  STANDARD OF REVIEW

Because the petition was filed after April 24, 1996, it is governed by the standard of

review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28

U.S.C. § 2254.  Consequently, this Court cannot grant relief unless the decision of the state court

"was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States at the time the state court rendered its

decision or "was based on an unreasonable determination of the facts in light of the evidence

---

[2] *People v. Robinson*, 814 N.Y.S.2d 418 (App. Div.), *lv. denied*, 854 N.E.2d 1288 (N.Y. 2006) (Table).

[3] *See* Rules—Section 2254 Cases, Rule 5(b).

2

presented in the State court proceeding."[4]  The Supreme Court has explained that "clearly

established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the

Supreme Court] as of the time of the relevant state-court decision."[5]  The holding must also be

binding upon the states; that is, the decision must be based upon constitutional grounds, not on

the supervisory power of the Supreme Court over federal courts.[6]  Thus, where holdings of the

Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that

the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[7]  When a claim falls

under the "unreasonable application" prong, a state court's application of Supreme Court

precedent must be objectively unreasonable, not just incorrect or erroneous.[8]  The Supreme Court

has made clear that the objectively unreasonable standard is a substantially higher threshold than

simply believing the state court determination was incorrect.[9]  In a federal habeas proceeding, the

standard under which this Court must assess the prejudicial impact of constitutional error in a

state-court criminal trial is whether the error had a substantial and injurious effect or influence in

---

[4] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[5] *Williams*, 529 U.S. at 412.

[6] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[7] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam).

[8] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[9] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

determining the outcome.[10]  Petitioner "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated."[11]

In applying this standard, this Court reviews the last reasoned decision by the state court.[12]  In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[13]

To the extent that the petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[14]  A federal court must accept that state courts correctly applied state laws.[15]  A petitioner may not transform a state-law issue into a federal one by simply asserting a violation of due process.[16]  A federal court may not issue a habeas writ based upon a perceived error of state law

---

[10] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

[11] *Hawkins v. Costello*, 460 F.3d 238, 246 (2d Cir. 2006) (internal quotation marks and citation omitted).

[12] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir. 2000).

[13] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[14] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[15] *Bell v. Cone,* 543 U.S. 447, 455 (2005); *see Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

[16] *See Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002).

4

unless the error is sufficiently egregious to amount to a denial of due process under the Fourteenth Amendment.[17]

## IV.  DISCUSSION

<u>Ground 1:  Ineffective Assistance of Trial Counsel</u>.

In his petition Robinson contends that he was denied the effective assistance of trial counsel.  Specifically, Robinson alleges that counsel:  (1) allowed persistent bolstering of identification testimony throughout trial; (2) inexplicably waived a suppression hearing resulting in the admission into evidence at trial of an alleged admission; (3) failed to call a witness who allegedly could testify to the victim's inability to identify Robinson as the shooter or ask for a missing witness charge concerning that witness; (4) failed to call a police officer whose discussion with the victim immediately after the shooting was allegedly exculpatory; (5) failed to object to the hearsay testimony of two of the prosecution witnesses; (6) failed to object to the prosecutor's improper comments made during summation; (7) failed to ask for a limiting instruction, or a clarification of, the court's charge regarding the consciousness of guilt testimony of a witness; and (8) conceded Robinson's guilt on two of the charges.

Robinson raised this ineffective assistance of counsel argument on direct appeal.  The Appellate Division summarily rejected Robinson's arguments, simply stating:  "that defendant received meaningful representation."[18]  Where the state court provides no reasoning when addressing the ground or grounds raised on the merits and no independent state grounds exist for

---

[17] *See Pulley v. Harris*, 465 U.S. 37, 41 (1984).

[18] *Robinson*, 814 N.Y.S.2d at 421.

not addressing those grounds, this Court must decide the issues *de novo* on the record before it.[19] In so doing, because it is not clear that it did not so do, this Court assumes that the state court decided the claim on the merits and the decision rested on federal grounds.[20]  This Court gives the assumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[21]

Under *Strickland v. Washington*,[22] to demonstrate ineffective assistance of counsel, Robinson must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[23]  A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[24]  Robinson must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[25]

---

[19] *See Dolphy v. Mantello*, 552 F.3d 236, 239–40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530–31 (2003) (applying a *de novo* standard to a federal claim not reached by the state court).

[20] *Harris v. Reed*, 489 U.S. 255, 263 (1989); *Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *see Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris–Coleman* interplay); *see also Fama v. Comm'r of Corr. Svcs.*, 235 F.3d 804, 810–11 (2d Cir. 2000) (same).

[21] *Jimenez*, 458 F.3d at 145–46.

[22] *Strickland v. Washington*, 466 U.S. 668 (1984).

[23] *Id.* at 687.

[24] *Id*.

[25] *Woodford v. Visciotti*, 537 U.S. 19, 22–23 (2002); *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

6

*Strickland* and its progeny do not mandate this court act as a "Monday morning quarterback" in reviewing tactical decisions.[26]  Indeed, the Supreme Court admonished in *Strickland*:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.  There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.[27]

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold."  *Schriro, supra,* at 473, 127 S.Ct. 1933.  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.  See *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").[28]

---

[26] *See Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

[27] 466 U.S. at 689 (internal citations and quotation marks omitted).

[28] *Knowles v. Mirzayance*, 556 U.S. ___, 129 S. Ct.1411, 1420 (2009).

7

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard.[29]

While judicial inquiry into counsel's performance under *Strickland* must be highly deferential, it is "by no means insurmountable," but nonetheless remains "highly demanding."[30] "Only those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial."[31]

Robinson bears the burden of proving that counsel's trial strategy was deficient. "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"[32] "In determining whether the defendant received effective assistance of counsel, 'we will neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight,' but rather, will defer to counsel's sound trial strategy."[33] "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment."[34]

"A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional

---

[29] *See Id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003)).

[30] *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

[31]*Id.* at 382.

[32] *Strickland*, 466 U.S. at 689.

[33] *Kimmelman*, 477 U.S. at 382 (quoting *Strickland*, 466 U.S. at 689).

[34] *Strickland*, 466 U.S. at 681.

judgment."[35]  The court must then consider those acts or omissions against "prevailing

professional norms."[36]  Even then, "counsel is strongly presumed to have rendered adequate

assistance and made all significant decisions in the exercise of reasonable professional

judgment."[37]

The Appellate Division found that Williams was provided with meaningful

representation.  This Court is not bound by that determination, but must independently determine

whether the application of the New York  "meaningful representation" rule in this case was an

unreasonable application of *Strickland*.[38]

1.  *Bolstering Claim*.  Robinson argues that trial counsel was ineffective for failing to

object when the prosecution improperly elicited testimony from the two attending paramedics

who responded to the scene of the incident, the mother of the victim, and the officer who arrested

Robinson that the victim had identified him as the perpetrator.[39]  Robinson contends that this

testimony turned a one-witness identification into a five-witness identification, constituting

improper bolstering, to which counsel should have interposed an objection.[40]  New York's rules

---

[35] *Id*. at 690.

[36] *Id*.

[37] *Id*.

[38] *See Henry v. Poole,* 409 F.3d 48, 71 (2d Cir. 2005).

[39] Although Robinson does not specifically identify the "bolstering" testimony, it  is assumed that Robinson is alluding to the testimony that the victim identified Robinson as the assailant by the two paramedics (Docket 11-10, p. 185; *id*., p. 358); the victim's mother (Docket No. 11-11, p. 4); and the arresting officer (Docket 11-10, pp. 237–47).  Contrary to Robinson's inference, the arresting officer did not testify that the victim had identified Robinson as the assailant or that this identification was the basis for Robinson's arrest.

[40] Under New York law, bolstering is corroboration of an identification made by one

(continued...)

regarding bolstering are subject to several exceptions, including an exception for when the reliability or accuracy of an identification is brought into question.[41]

In this case, it is evident that from the outset to the end, a substantial, if not the predominant, defense theory on the charges arising out of the shooting was the inability of the victim to identify Robinson as the perpetrator.[42]  Robinson advances no argument that this was not a viable defense or that counsel was in any way ineffective for presenting this defense. Consequently, any objection would have been overruled under New York law.  In the absence of a reasonable probability that the objection would have been sustained, it hardly constitutes ineffective assistance of counsel under *Strickland-Hill* to not have interposed the objection.

2.  *Waiver of Suppression Hearing*.  When he was arrested, Robinson stated to the arresting officer "so I guess he is talking now."[43]  Robinson argues that trial counsel waived a suppression hearing and instead argued that the statement was not an admission but inadmissible hearsay.  According to Robinson, counsel failed to establish that Robinson was in custody, represented by counsel, to whom the statement was made, to whom Robinson was referring,

---

[40](...continued)
person by the testimony of another witness whose testimony is limited to merely establishing that the identification occurred.  *People v. Trowbridge*, 305 113 N.E.2d 841, 843 (N.Y. 1953), superceded by statute on another ground by N.Y. Crim. Proc. Law § 60.25 as recognized in *People v. Lagana*, 324 N.E.2d 534 (N.Y. 1975).

[41] *See People v. Neely*, 819 N.Y.S.2d 106, 108–09 (App. Div. 2006), *lv. denied*, 862 N.E.2d 799 (NY 2007) (Table); *People v. Bridgefourth*, 787 N.Y.S.2d 535, 537 (App. Div. 2004), *lv. denied*, 829 N.E.2d 676 (N.Y. 2005) (Table), *reconsideration denied*, 834 N.E.2d 1264 (N.Y. 2005) (Table).

[42] *See, e.g.*,  Docket No. 11-10, p. 31 (Defense Opening Statement); Docket No. 11-10, p. 246 (testimony elicited on cross-examination as to "probably" statement in the police report); and Docket No. 11-11, pp. 103–10 (Defense Summation).

[43] Docket 11-10, p. 242.

whether the officer asked questions before or after the statement, or whether Robinson asked to have his attorney present at any time.  According to Robinson these were necessary to determine the voluntariness of the admission or confession.  The Appellate Division found that the statement was made voluntarily, holding: "[c]ontrary to the contention of defendant, his statement to the arresting officer was spontaneous and was therefore properly admitted at trial."[44]

The arresting officer testified at trial:

> Q      Detective Schmidt, did you advise him what you were there for?
>
> A      Yes, sir, I did.
>
> Q.      Okay.  What did you tell him?
>
> A.      I advised him that I was there to arrest him for attempted murder in the first degree, and criminal possession of a weapon in the first degree, for the shooting of Mr. Thihele Gaines.
>
> Q      And did Mr. Robinson say anything to you at that time?
>
> A      Yes, he did. He said, so I guess he's talking now.[45]

Robinson does not argue that the determination of the Appellate Division was factually incorrect.  Nor does Robinson provide any evidence that the questions he contends were never answered would have changed the outcome.[46]  In particular, Robinson has not made any argument or presented any evidence that the strategy chosen, to challenge admissibility of the

---

[44] *Robinson*, 814 N.Y.S.2d at 420–21.

[45] Docket No. 11-10, p. 242.

[46] In the colloquy at the *Wade/Huntley* hearing, the prosecutor revealed that Robinson was in custody and noted that Robinson made the statement immediately after being arrested without being asked any questions.  Docket No. 11-8, p 5.  Robinson does not challenge this statement.

statement on the grounds that it was inadmissible hearsay, not an admission, was unsound under the circumstances.  This Court cannot find that counsel was ineffective for pursuing that strategy.

3.  *Failure to Ask for a Missing Witness Charge as to Officer Lioto*.  This issue arises out of a police report which contains a statement attributed to the victim encased in quotation marks.  When asked who had assaulted him, the victim answered "probably the guys who stabbed me."  Robinson argues that trial counsel was ineffective in failing to request a missing witness charge with respect to Officer Lioto, the officer who rode in the ambulance with the victim and prepared the report containing the victim's statement.  Although the police report itself was excluded from evidence, trial counsel was able to get the statement on the police report read verbatim into the record through a prosecution witness.[47]  Robinson's position is that Officer Lioto could have added material information on the issue of the victim's identification of his shooter(s), *i.e.*, the victim's inability to identify his shooters immediately following the shooting.

A "missing witness" charge allows the jury to draw an unfavorable inference based on a party's failure to call a witness who would normally be expected to support that party's version of the facts.[48]  To warrant a missing witness instruction, Robinson must establish that: (1) the witness had knowledge material to the trial; (2) the witness would naturally be expected to give noncumulative testimony favorable to the party who failed to call the witness; and (3) the witness is available to the party who would be expected to call the witness.[49]  Robinson's argument fails on the second prong.  The alleged statement that the witness would have been expected to testify

---

[47] Docket No.11-10, pp. 245–46.  This statement and its use by trial counsel is further discussed in the discussion on the fifth ground, *infra*, p. 29.

[48] *See People v. Savinon*, 791 N.E.2d 401, 403 (N.Y. 2003).

[49] *People v. Gonzalez*, 502 N.E.2d 583, 586 (N.Y. 1986).

about and its source were bought to the attention of the jury.  A defendant is not entitled to a missing witness charge where the testimony of the witness would have been merely cumulative of evidence already in the record.[50]  The testimony of Officer Lioto would have been either cumulative or, as discussed in the immediately following discussion on the failure to call him as a witness, unfavorable to Robinson.  Even if it is likely that a missing witness charge, if requested, would have been granted, Robinson has failed to satisfy the second prong of the *Strickland-Hill* test—prejudice.  Given the testimony of the paramedics and the victim's unequivocal identification of Robinson at trial, it is not reasonably probable that the giving of a missing witness charge would have changed the outcome.[51]

4.  *Failure to Call Police Officer.*  Robinson contends that the failure to call Officer Lioto as a witness constituted ineffective assistance of counsel.  Robinson complains that counsel's apparent reasoning in not calling Officer Lioto, in his "experience generally is that police officers do not cooperate with defense [attorneys],"[52] did not justify the failure to call him as a witness.  As noted in the immediate preceding discussion of the missing witness charge, the statement of the victim allegedly made to and recorded by Officer Lioto came before the jury.  The most Officer Lioto could have done was confirm that he prepared the report and that, to the best of his

---

[50] *See People v. Williams*; 740 N.Y.S.2d 879, 880 (App. Div), *lv. denied*, 776 N.E.2d 12 (N.Y. 2002) (Table); *People v. Rivera*, 554 N.Y.S.2d 125, 127 (App. Div. 1990) (citing *Gonzalez*); *People v. Morris*, 552 N.Y.S.2d 803, 804 (App. Div.), *lv. denied*, 559 N.E.2d 292 (N.Y. 1990) (Table).

[51] *Compare with People v. Donovan*, 585 N.Y.S.2d 70, 72 (App. Div. 1992) (inconsistencies between the testimony of defense witnesses and one police officer); *People v. Erts*, 525 N.Y.S.2d 899, 902 (App. Div.), *aff'd*, 534 N.E.2d 833 (N.Y. 1988) (missing officer's testimony would not have been cumulative and less than overwhelming evidence of guilt).

[52] Docket No. 11-11, p. 104.

13

recollection, the statement accurately reflects what the victim stated.  On the other hand, Officer Lioto could have testified that he had no present recollection of the statement, which would have left the evidence before the jury as it stood without the officer's testimony.  Perhaps, as his closing summation to the jury indicates, trial counsel feared Officer Lioto may even have testified that in preparing the report he misplaced the quotation mark and incorrectly used the plural "guys" instead of the singular "guy," testimony that would have been detrimental to Robinson.  Given the uncertainties of the testimony Officer Lioto may have given, this Court cannot, under all the circumstances, say that the failure to call him as a witness was not appropriate trial strategy.

5.  *Failure to Object to Hearsay Testimony*.  Robinson's contentions here concern the testimony of a detective regarding his conversations with Joy Johnson (who was not called as a witness in this case) and the failure of trial counsel to object to that testimony.  Robinson's argument is grounded on what he contends was a violation of his Sixth Amendment right to be confronted with the witnesses against him.  In its proper context, the testimony to which Robinson refers relates to the failure of the investigators to obtain forensic evidence of gunshot residue in the vehicle allegedly used in the shooting.  The detective testified that his assignment was to find Robinson and Wallace.[53]  He went to an address where Robinson occasionally stayed with a female friend named Joy Johnson.[54]  Upon arriving he noticed a dark-colored SUV that

---

[53] Docket No. 11-10, pp. 142, 150–51.

[54] Docket No. 11-10, p. 142.

appeared from a distance to be black, but upon closer examination it was determined to be a

"very, very dark green."[55]  On cross-examination by defense counsel, the detective testified:

> Q       Did it occur to you that if you thought that vehicle was
> somehow involved in a shooting that a search by the forensics
> people of the interior of that car might be significant?
>
> A       That really wasn't my call to make, sir.
>
> Q       You know when one fires a gun certain nitrates backfire, attach to
> clothing and that sort of thing, correct?
>
> A       That's correct.
>
> Q.      You know about transference, those -- don't you?
>
> A       That's correct.
>
> Q       So did it occur to you that there might be some evidence that
> somebody who drove that vehicle recently had fired a gun?
>
> A.      If I could, if I could have verified for sure that that was the car sure
> I would absolutely think that, sure.
>
> Q       So it certainly was significant wasn't it to examine the interior of
> that car?
>
> A       I didn't have anything any reason to show a basis for that at the
> time.  I only, I only had that it fit the description of the vehicle we were looking
> for by color.
>
>                          *   *   *   *
>
> Q       All right.  But as far as you know nobody took a picture of the car,
> nobody examined forensically the interior of the car, is that correct?
>
> A       As far as I know, that's correct.
>
> Q       As you sit there now that might be significant, correct?

---

[55] Docket No. 11-10, pp. 143, 146.

A       It might be important in this particular vehicle?

Q       Yes?

A       I can't really say that exactly, at this time.

Q       Wouldn't it help the jury to prove or disprove or help the prosecutor, or to prove or disprove the use of that car in the shooting, don't you think that's logical and reasonable?

A       Yes, it's always possible, sure.[56]

On recross-examination defense counsel pursued the issue further:

Q       You felt that it was important to determine what the relationship between Mr. Robinson and the owner of the vehicle was, didn't you?

A.      Sure.

Q.      And you're telling us there is no way that you could have held that vehicle pending the application for a warrant?

A.      At the time, at the time I didn't have that information from me.  I learned that information from Joy Johnson the very next day when she told me that he had access to the vehicle because he also had a key to the vehicle because he was currently her boyfriend.

Q       At that time, did you ask her if you could take the vehicle, to make a forensic search or have the forensic people search the interior to make a determination as to whether or not there was any relevant evidence of a shooting in that vehicle, did you?

A       If I had the privilege of doing it the next day?

Q.      I asked you if asked her if you could take it?

A.      Miss Johnson made it very clear that she was not  going to cooperate, she stated to me, in my report it states that she said.

Q.      I didn't ask you what she said?

---

[56] Docket No. 11-10, pp. 149–151.

16

A.    But this is what.

Q.    Did you ask her, did you ask her to?

MR. DUNCANSON:  I am sorry, I object.

[Discussion on objection omitted]

Q.    Did you ask her the owner of the vehicle, whether or not she would voluntarily consent for you or some forensic  person to examine the vehicle for evidence, did you ask her that?

A    That exact question, no.[57]

Taken in context, it is obvious that trial counsel was attempting to weaken the evidence connecting Robinson to the shooting by pointing to gaps in the investigation.  This Court cannot say that in pursuing this strategy trial counsel was not acting as the counsel guaranteed by the Sixth Amendment.  More importantly, however, to the extent the testimony was based upon hearsay, *i.e.*, Robinson's relationship with Johnson and his access to the vehicle, there is nothing in the record to indicate that that information was incorrect.  Indeed, Robinson has not contended before this Court that it is incorrect.  Nor, did he make that contention before the Appellate Division.  Thus, Robinson has failed to satisfy the second prong of the *Strickland-Hill* test—prejudice.

6.  *Failure to Object to Prosecutor's Comments*.  Robinson argues that the failure of trial counsel to object to numerous comments made by the prosecutor in his closing summation rendered his representation ineffective.  These comments are addressed in the discussion of

---

[57] Docket No. 11-10, pp. 153–55.

Robinson's fifth ground and, in the interests of brevity are not repeated here.[58]  Having

determined that the comments made by the prosecutor did not constitute prosecutorial

misconduct, there is no reasonable probability that any objection would have been sustained.

Consequently, the failure to object did not constitute ineffective assistance of counsel.

      7.  *Failure to Request Limiting Instruction*.  On this issue, Robinson contends that trial

counsel was ineffective by failing to request a limiting instruction on the testimony of Elisha

Kimbrough.  Robinson offered Kimbrough cash, money for bail, and a promise to cover his legal

costs, if Kimbrough would take responsibility for the attempted murder and criminal possession

charges stemming from the shooting.  Robinson was not charged with a crime for making this

offer to Kimbrough.  Specifically, Robinson contends that trial counsel should have requested

that the jury be instructed that the testimony of Kimbrough was to be considered solely for the

purpose of establishing a consciousness of guilt, but not as propensity to commit bribery, one of

the charges with which Robinson was charged at the time the testimony was given and in the

final instructions.  The record reflects that the court did give the following instruction as part of

the final instructions.

> Now in this case, the People have introduced evidence of certain behavior
> and conduct by the defendant from which the People contend that the jury may
> draw an inference that such conduct evidences a consciousness of guilt.  The
> evidence upon which the People rely is as follows:  The testimony of Elisah
> Kimbrough that the defendant offered to pay him fifteen thousand dollars, provide
> bail, and hire an attorney to represent him if he took responsibility for the shooting
> of Thihele Gaines.  Now whether or not the evidence as I have mentioned is in
> fact evidence of a guilty mind on the part of the defendant and if so what weight
> should be given to that evidence is exclusively a jury question.  Under some
> limited circumstances proof such conduct may be considered by the jury, I instruct
> you now under what circumstances you may consider such conduct.  Your first

---

[58] *Infra*, pp. 28–34.

duty is to decide whether the evidence of the defendant's conduct upon which the People rely if believed by you does in fact evidence a consciousness of guilt on the part of the defendant.  You must accept, you must examine such evidence carefully.  Such conduct may have an innocent explanation.  If you find such an explanation from the nature of the conduct itself, you must disregard such evidence totally, forget that you heard it.  For example, common experience teaches that even an innocent person who finds himself placed under suspicion may instinctively or protectively resort to conduct which may weight -- the appearance of guilt in order to avoid arrest or criminal prosecution.   And thus if an innocent purpose may be drawn from the evidence, you may disregard it completely.  Only if you find that the conduct of the defendant was solely motivated by consciousness of guilt may you consider and weigh it in your deliberations.  I instruct you that proof of conduct evidencing consciousness of guilt has slight value.  Standing alone, that is.  Such evidence may never be made a basis for the finding of guilt.  However, when the People have introduced other direct and substantial evidence pointing to the guilt of the defendant, then evidence of the defendant's consciousness of guilt may be considered by you together with such other direct and substantial evidence of guilt in arriving at your verdict.[59]

Notably missing from the instruction is any limitation on the use of the testimony.  As a minimum, the Instruction should have included the following, or substantially similar, language: "This evidence is no proof whatsoever that defendant possessed any propensity or disposition to commit any crime charged in the indictment, but may be considered solely on the issue of consciousness of guilt."[60]  In a case in which defense counsel failed to request a limiting instruction on the use of testimony concerning an uncharged crime the Appellate Division, Third Department, applying the "plain error" rule reversed and ordered a new trial in the absence of a cautionary instruction on the use of uncharged criminal conduct, observing:

Our courts have repeatedly stressed the importance of limiting instructions when admitting proof of uncharged criminal acts because, "by giving thorough and repeated cautionary instructions to the jury on the limited purpose for which this

---

[59] Docket No. 11-11, pp. 168–70.

[60] *See People v. Small*, 904 N.E.2d 811, 812 (N.Y. 2009).

evidence was being received, * * * the possibility of prejudice" is minimized (citations omitted).  The failure to instruct the jury concerning the limited purposes for which this testimony was being received was error which heightened the danger of the jury receiving said evidence as proof of defendant's propensity to commit the crimes charged.  In a case such as this, where the finding of guilt rests squarely on the jury's assessment of the credibility of the victim and defendant, we cannot say that the error was harmless and did not affect the jury's verdict.  Such errors "seriously impinged upon defendant's right to a fair trial" (citations omitted).[61]

Given the importance the New York courts give to the necessity for proper cautionary instructions when testimony concerning uncharged crimes is admitted,[62] this Court cannot say that, in failing to request a cautionary instruction, trial counsel was acting as the counsel guaranteed by the Sixth Amendment.  Nor, because the evidence in support of the bribery for which he was charged rested almost exclusively on the testimony of William Sullivan, the person Robinson was alleged to have bribed, can this Court say that this error was not prejudicial.  The prejudicial effect of the omission of the cautionary instruction was magnified by the prosecution's summation.  In his summation the prosecutor referred to the testimony of Elisah Kimbrough as going directly to Robinson's consciousness of guilt.[63]  Had that been the sole comment by the prosecutor with regard to the testimony of Kimbrough it would tend to de-magnify the error.  Unfortunately, later in his summation the prosecutor, after describing the efforts of Robinson to bribe or coerce William Sullivan into not testifying in an effort to sabotage the People's case, went on to say:

---

[61] *People v. Greene*, 760 N.Y.S.2d 769, 773–75 (App. Div. 2003).

[62] *See, e.g., People v. Sayers*, 883 N.Y.S.2d 142, 145 (App. Div. 2009) (holding that an improper cautionary instruction given without objection that misled the jury into believing it could consider the uncharged crime on propensity required reversal).

[63] Docket No. 11-11, p. 121.

He's still -- out because of his desperation and his desire to avoid this insignificant charge even after he's shot Thihele Gaines, to Mr. Sullivan.  Okay.  You heard no doubt about that. Dave Gilbertson came in here said he was on the security detail, came in and he's on the phone with him.  Why would he contact Mr. Sullivan on Sunday and be talking about whether he's coming to trial the next day?  You know, and then finally we have got Elisah Kimbrough.  Again, I make reference to the fact that you know Mr. McGraw I think characterized him as an insignificant witness.  I don't think Elisah Kimbrough is an insignificant witness because what Elisah Kimbrough tells you that even while this case is pending, he's still trying to pervert the administration of justice, and screw up the People's case.  So what does he do?  Well, there is only certain things that I can do at this point.  I have got it. Why don't I find somebody else to take the charge for me.[64]

The prosecutor went on to describe, in detail, the scheme concocted by Robinson involving Kimbrough to further Robinson's effort's to avoid conviction.[65]  The clear impact of this argument on the jury was to impress upon them that the offer to Kimbrough was a continuation of Robinson's efforts to sabotage the People's case, which included the bribery of William Sullivan.  In short, the prosecutor inferred the jury not only could, but should, use Kimbrough's testimony in deciding Robinson's guilt or innocence on the bribery charge.  As the Supreme Court has noted, "arguments of counsel generally carry less weight with a jury than do instructions from the court," but they may sometimes "have a decisive effect on the jury."[66]

In this respect, Robinson was denied the effective assistance of counsel within the scope of *Strickland-Hill*, and the decision of the Appellate Division to the contrary was an unreasonable application of federal law as established by the Supreme Court.  Because Kimbrough's testimony was properly admitted on the issue of consciousness of guilt and the trial court's instruction on that point was not erroneous, this Court cannot, however, hold that this error infected the entire

---

[64] Docket No. 11-11, pp. 142–43.

[65] Docket No. 11-11, pp. 143–46.

[66] *Boyde v. California,* 494 U.S. 370, 384 (1990).

trial sufficient to warrant granting Robinson relief with respect to the charges stemming from the shooting. This Court may grant only such relief as "law and justice require."[67] In this case, ordering a new trial on the bribery charge, Count Seven of the indictment, or, in the absence of a retrial, adjustment of the sentence eliminating the sentence imposed as a result of Robinson's conviction on that count, is an appropriate remedy. It will be so ordered.

    8. *Concession of Guilt*. On this point Robinson contends that trial counsel was ineffective in two respects: (1) conceding his guilt on the assault and bribery charges in his closing summation; and (2) pursuing two inconsistent defenses, identification and justification. Robinson was charged with multiple crimes stemming from four related criminal transactions. The Appellate Division described them as follows:

> The first transaction involved the stabbing of a victim; the second involved tampering with a witness to the stabbing; the third involved tampering with the same witness on a different occasion and attempting to bribe him; and the fourth involved the shooting and attempted murder of the stabbing victim the day before the trial on the stabbing incident was scheduled to begin.[68]

The concession of guilt allegation relates to the first and third transactions. His complaint arises out of the following remarks during summation:

> Consider the logic of and there is some testimony from Jamontae Wallace, I think that Gaines gave them the finger as they went by. Consider the reasonableness of Gaines seeing the defendant and there is no question or issue, it's the defendant. And Jamontae Wallace. But consider the reasonableness of him turning around and seeing a guy coming at him with a knife, a hammer, I think he said he just saw the defendant first with a knife. Consider the reasonableness and the intelligence of him saying let's fight -- and unless he's armed himself. There is no direct evidence or testimony in regard to that fact. We know that Gaines was within feet

---

[67] 28 U.S.C. § 2243; *see Danforth v. Minnesota*, 552 U.S. 264, ___, 128 S. Ct. 1029, 1040 (2008).

[68] *Robinson*, 814 N.Y.S.2d at 419.

of his uncle's volunteer car shop.  That he could have gone right in.  Do you think for a moment if he didn't have a weapon that he wouldn't have just gone in there when he saw the knife?  Is that a reasonable possibility?  It's really all I am going to say about that count.  And very little to say about the bribery whatever it is.[69]

Contrary to Robinson's argument, the summation was not a concession of guilt on the assault charge.  The problem that counsel faced was that the evidence in support of the assault charge was overwhelming.  More tellingly, however, is that in neither his petition to this Court nor on direct appeal to the Appellate Division, has Robinson advanced any other argument that trial counsel could have made.[70]

Robinson's argument that defense counsel was pursuing two inconsistent defenses—identification and justification—is factually incorrect.  The identification defense ran to the crimes arising out of the shooting, *i.e.*, the attempted first-degree murder and weapons charges.  To the extent that defense counsel may have attempted to interject justification, this defense went to the earlier assault charge, not the charges arising out of the shooting.  On the assault charge, the identification of Robinson (and Wallace) was never seriously contested and was established by the corroborative testimony of three witnesses.  There simply was no correlation between the two defenses, nor were they inconsistent.  Defense counsel in this case faced a difficult challenge, attempting to defend against multiple crimes in a single trial.  This difficulty was recognized and considered by defense counsel when he moved to sever the counts.  That defense

---

[69] Docket No. 11-11, pp. 96–97.

[70] The Court having previously determined that Robinson is entitled to a new trial on the bribery count, it need not discuss the impact of the failure to address that count in counsel's closing summation.

counsel made the best of the facts that he had to work with and still failed to secure an acquittal does not constitute ineffective assistance of counsel.

Except with respect to the failure to request a limiting instruction on the testimony of Kimbrough, this Court cannot say that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[71]   Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Petitioner's case within the scope of *Andrade–Williams–Schriro*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable. Robinson has failed to establish that counsel committed any error that was so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment, or that his defense was prejudiced, as required by *Strickland-Hill*.  In particular, Robinson has failed to overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Thus, Robinson is not entitled to relief under his first ground, except with respect to his conviction on the bribery charge.

---

[71] 28 U.S.C. § 2254(d).

<u>Ground 2:  Denial of Right to be Present</u>.

Robinson contends that he was denied his right to be present at all material stages of the

trial.  As Respondent correctly observes, although Robinson complains that the trial judge did not

advise him of this right to be present at all material stages of the trial, *e.g*., discussions, bench

conferences, in-chambers discussions, *etc*., he does not identify the stage of the trial at which his

presence was excluded.  In his Traverse, he identifies a bench side-bar conference at which the

introduction of prior uncharged acts was discussed.  He also alleges that the holding of the side-

bar conference was a violation of his right to a *Ventimiglia* hearing.[72]  The Appellate Division

rejected Robinson's contentions, holding:

> Defendants generally have a right to be present during *Ventimiglia*
> hearings or sidebar conferences because such a *Ventimiglia* hearing or sidebar
> conference "is an ancillary hearing [or sidebar conference] at which a defendant
> has the right to be present when he may have 'something valuable to contribute'"
> (citations omitted).  We conclude that defendant's right to be present was not
> violated in this case because the only issue discussed was whether the testimony
> was more prejudicial than probative, and thus there was no potential for
> meaningful participation on defendant's part (citations omitted).  We further
> conclude that the evidence concerning defendant's alleged uncharged act of
> bribery was properly admitted inasmuch as it was relevant to the issue of
> consciousness of guilt, "thereby providing circumstantial corroborating evidence
> of identity" (citations omitted).[73]

To the extent Robinson claims he was denied his right to a *Ventimiglia* hearing, he raises

an issue of state procedural law.  Were Robinson contending he was not provided an opportunity

---

[72]*People v. Ventimiglia*, 420 N.E.2d 59 (N.Y. 1981).  (*Ventimiglia* is a short-hand
reference to the New York procedure under which the trial court determines in advance whether
evidence of uncharged crimes is probative for the purpose of showing (1) motive, (2) intent, (3)
absence of mistake or accident, (4) common scheme or plan; (5) identity and whether that
probative value outweighs the prejudice

[73] *Robinson*, 814 N.Y.S.2d at 420.

to challenge the admissibility of the evidence, a question of Federal constitutional magnitude might be raised.  That is not the case here.  In this case, it is the procedural vehicle by which the objection is made that is at issue, strictly a question of state procedural law beyond the purview of this Court in a federal habeas proceeding.

Where, as here, the claimed error does not relate to a criminal defendant's right to confront witnesses or evidence presented against him, the right to be present is nonetheless protected by due process.[74]  This due process right to be present exists "'whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge'" and "'when a fair and just hearing would be thwarted by his absence.'"[75]  As the Second Circuit has observed, under New York law where testimony is taken and questions of fact are to be determined are included in the definition of trial for purpose of a defendant's right to be present at all material stages of trial; but, in the argument of a motion to decide a pure question of law, no right to be present inures to a defendant.[76]  The same is true under Federal Rule of Criminal Procedure 43.[77]  No decision of the Supreme Court or any Court of Appeal has held that Rule 43 is unconstitutional.  Accordingly, given the total absence of federal authority on the right of a criminal defendant to be present at a side-bar discussing questions of law, this Court cannot say that the decision of the Appellate Division was "contrary to, or involved an unreasonable

---

[74] *See United States v. Gagnon*, 470 U.S. 522, 526 (1985).

[75] *Kentucky v. Stringer*, 482 U.S. 730, 745 (1987) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105–06, 108 (1934)).

[76] *Clark v. Stimson*, 214 F.3d 315, 322 (2d Cir. 2000).

[77] A defendant need not be present when "[t]he proceeding involves only a conference or hearing on a question of law."  Fed. R. Crim. P. 43(b)(3).

application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[78]   Robinson is not entitled to relief under his second ground.

Ground 3:  Voluntariness of Statement to Police.

Robinson contends that:  (1) he was entitled to a hearing on the voluntariness of a statement made to police under state law; and (2) his statement was involuntary.  The Appellate Division rejected Robinson's argument regarding the voluntariness of his statement, holding: "[c]ontrary to the contention of defendant, his statement to the arresting officer was spontaneous and was therefore properly admitted at trial."[79]   In the absence of clear and convincing evidence to rebut that finding of fact, this Court is bound by it.[80]

On his alternative point, failure to hold a hearing as required by N.Y. Criminal Procedure Law § 710.60, the Appellate Division declined to address that issue, holding:

> The remaining contentions of defendant concerning his statement to the arresting officer and the CPL 710.30 notice are raised for the first time on appeal and thus are not preserved for our review (*see* CPL 470.05[2]), and we decline to exercise our power to review those contentions as a matter of discretion in the interest of justice (*see* CPL 470.15[6][a]).

---

[78] 28 U.S.C. § 2254(d); *see Eisemann v. Herbert*, 401 F.3d 102, 110 (2d Cir. 2005); *McKinney v. Artuz*, 326 F.3d 87, 103 (2d Cir. 2003).

[79] *Robinson*, 814 N.Y.S.2d at 420–21.

[80] 28 U.S.C. § 2254(e)(1).

Ordinarily, because the Appellate Division did not address this issue on the merits, this Court would be required to address it *de novo* on the record before it.[81]   In this case, however, the issue of entitlement to a hearing is one of state law and is beyond the purview of this Court in a federal habeas proceeding.[82]   Robinson has failed to present a Federal constitutional issue and is not entitled to relief under his third ground.

Ground 4.  Sufficiency of the Evidence (First-Degree Assault).

Robinson argues that there was insufficient evidence to establish a necessary element of first-degree assault:  that the victim suffered a serious physical injury.  The Appellate Division summarily rejected Robinson's arguments, holding:  "[f]inally, we conclude that the verdict is not against the weight of the evidence."[83]

Under *Jackson*,[84] the constitutional standard for sufficiency of the evidence is: "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[85]  This Court must, therefore, determine whether the decision of the Appellate Division on the merits unreasonably applied *Jackson*.

Robinson misperceives the role of a federal court in a habeas proceeding challenging a state-court conviction.  It is a fundamental precept of dual federalism that the states possess

---

[81] *See Dolphy v. Mantello*, 552 F.3d 236, 239–40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530–31 (2003) (applying a *de novo* standard to a federal claim not reached by the state court).

[82] *Bell*, 543 U.S. at 455; *Coleman*, 501 U.S. at 729.

[83] *Robinson*, 814 N.Y.S.2d at 421 (citation omitted).

[84] *Jackson v. Virginia*, 443 U.S. 307 (1979).

[85] *Id.* at 319 (emphasis in the original).

primary authority for defining and enforcing the criminal law.[86]   Consequently, although the

sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it

must undertake its inquiry by reference to the elements of the crime as set forth in state law.[87]

This Court is precluded from either re-weighing the evidence or assessing the credibility of

witnesses.  Under *Jackson*, the role of this Court is to simply determine whether there is any

evidence, if accepted as credible by the jury, sufficient to sustain conviction of the crime as

prescribed by state law.[88]  Here, the Appellate Division, a state court, found that there was

sufficient evidence to support conviction of the crimes under state law.  Review of that decision

is beyond the purview of this Court in a federal habeas proceeding.  Robinson is not entitled to

relief under his fourth ground.

Ground 5:  *Improper Prosecutorial Statements*.

Robinson contends that several statements made by the prosecution constituted

prosecutorial misconduct.  This issue was raised on direct appeal and rejected by the Appellate

Division, which held:

> Defendant failed to preserve for our review many of his challenges to the
> prosecutor's comments on summation (citations omitted).  In any event, we
> conclude that the comments by the prosecutor were either fair comment on the
> evidence or were in direct response to defense counsel's summation (citation
> omitted).

---

[86] *See Engle*, 456 U.S. at 128.

[87] *Jackson*, 443 U.S. at 324 n.16.

[88] *See Schlup v. Delo*, 513 U.S. 298, 330 (1995).

29

As with Robinson's first ground, the state court provided no reasoning for its holding.[89] Consequently, this Court must decide the issues *de novo* on the record before it, assume that the state court decided the claim on the merits and the decision rested on federal grounds, and give the assumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[90]   "[I]t is not enough that the prosecutor's remarks were undesirable or even universally condemned."[91]   "The relevant question is whether the prosecutor's comments 'so infect[] the trial with unfairness as to make the resulting conviction a denial of due process.'"[92]   Applying these standards, this Court will review each of the alleged improper prosecutorial comments (comment in bold print).

**1.  Mr. McGraw has talked about this whole issue of Mr. Gaines supposedly saying to Officer Lioto: Probably the guys I am supposed to testify against.  Okay.  You didn't hear any testimony about that.**[93]

Robinson argues that this misstates the evidence in that trial counsel elicited testimony on several occasions from witnesses that the report prepared by Officer Lioto indicated the victim had spoken the words "probably the guys I am supposed to testify against."  Robinson is correct

---

[89] Although it appears that Robinson is procedurally barred from raising this ground, Respondent has not asserted procedural bar as a defense.  *See* Rules—Section 2254 Cases, Rule 5(b).  Consequently, this Court deems that defense waived.

[90] *See* discussion, *ante*, p. 5.

[91] *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citations and internal quotation marks omitted).

[92] *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *Jenkins v. Artuz*, 294 F.3d 284, 294 (2d Cir. 2002).

[93] Docket No. 11-11, p. 119.

that one witness (not several) testified that the police report contained that statement.[94]  Robinson

points to no testimony of any percipient witness that the statement was made, only that the police

report contained such a statement, and this Court's word search of an electronic version of the

transcript did not reveal any such testimony.  The prosecutor's comment must be viewed in

context, including the argument that immediately followed it.

> What you heard from that chair was Thihele Gaines look you folks right in the eye
> and say, that guy shot me.  What you heard was two E.M.T.'s that Mr. McGraw
> says some ambulance driver who watches too much TV.  Okay.  Two entirely
> disinterested witnesses and you're going to get an instruction from the Court about
> credibility of witnesses and witnesses that have interests and disinterested
> witnesses.  And these two guys came in here and said to you Dave Corey said, I
> was asking him questions, I was engaging a conversation with him because that's
> part of my medical training.  I have got the person who has been shot who has
> been injured, he's lying there, I am trying to continuously reassess his orientation.
> And I'm talking to him.  And I am asking questions of him.  And I asked him who
> shot you?  And the response was unequivocal, the guy I am supposed to testify
> against.  Why are you going to testify against him?  Because he stabbed me.  It
> was an unequivocal response.  Mr. Corey said that.  Mr. Corey said the police
> officer is in the front listening to this.  Jamie Pienkowski comes in and said the
> same thing.  Now Mr. McGraw would have you believe that these two gentlemen
> came in and fabricated their testimony.  You assess the credibility of their
> testimony.  Mr. Corey offered the simple explanation for why it's not in the
> medical report.  Because it's a medical report.  They don't put things in the
> medical reports that are not germane to their medical condition.[95]

In his summation, trial counsel emphasized that the word "probably" was contained in the report,

even to the extent of reading the testimony of the witness who testified as to what was in the

report to the jury.[96]  To the extent that the prosecutor may have misstated the evidence, the jury

---

[94] Docket No. 11-10, p. 246.

[95] Docket No. 11-11, pp. 119-20.

[96] Docket No. 11-11, pp. 105–06.

had heard the evidence firsthand and the misstatement was, in the context given, so insignificant that its effect could not have been prejudicial.

**2.  And the District Attorney's Office didn't do that.  So the information that Mr. Wallace gave to him on that date and the information that he came in here and told you could have only come from one source.  That man right there.  And that's why he's worthy of belief.**[97]

The full statement of the prosecutor from which the quoted statement is extracted was:

There was some inference made by Mr. McGraw during his closing that Mr. Wallace's testimony was not worthy of belief because I'm not sure exactly how he said it but that he was fed the information by the cops and the D.A.s.  Okay.  Well, you heard Detective Schmidt when he came in here and said that he met with Mr. Wallace on the 16th and that Mr. Wallace gave him a statement, okay, about what happened.  And Detective Schmidt indicated to you that in no way, no shape, no form did he impart any of the information that the Syracuse Police Department had obtained during their investigation of this case from the morning of July 14th until the time he met Mr. Wallace, okay?  And the District Attorney's Office didn't do that.  So the information that Mr. Wallace gave to him on that date and the information that he came in here and told you could have only come from one source.  That man right there.  And that's why he's worthy of belief.[98]

Robinson argues that the prosecutor was essentially telling the jury that the witness, Wallace, was telling the truth and assuring the jury that the witness had not received the information he testified to from the police.  As Respondent points out, Robinson's counsel called into question the integrity and believability of witnesses; consequently, the prosecutor may rebut.[99]  It is also permissible for a prosecutor to argue that a particular witness is believable or

---

[97] Docket No. 11-11, pp. 114–15.

[98] Docket No. 11-11, pp. 114–15.

[99] *United Sates v. Carr*, 424 F.3d 213, 227 (2d Cir. 2005).

not worthy of belief by referring to evidence in the case.[100]  The prosecutor did not indicate his personal belief in the credibility of the witness, nor did the prosecutor's comments convey to the jury the impression that the prosecutor had information that was not disclosed to the jury, the dangers that vouching present.[101]

### 3. He didn't get that information from Detective Jimenez, he didn't get that information from Detective Schmidt, he didn't get it from me.[102]

The full statement from which the statement is extracted is:

And that's why we are here.  You heard that during that period of Friday and Saturday, that you know, that Mr. Robinson was making attempts at this point to try to speak with Mr. Gaines.  He's -- afraid at this point. Okay, now think about this in the context of the whole case.  Okay, we are two, three days from trial now. And he doesn't have any commitment from Mr. Gaines that Mr. Gaines isn't going to come in here like he did and say that's the guy who stabbed me.  He's getting nervous.  And when he tries to make contact with Mr. Gaines, Mr. Gaines didn't want anything to do with him, what does that do?  That sends a message to Mr. Robinson.  And Mr. Gaines is going to come in here and do the right thing. So what does he do?  He does the wrong thing.  He gets together with Mr. Wallace, they are talking.  Shows Mr. Wallace a gun.  A revolver, a .357 revolver. Okay. Now you know, Mr. Wallace sat here and told you yeah, you know he has got some familiarity with guns.  Okay.  Does that make him a thug?  I don't know. Maybe.  Okay.  Again, you don't have to like Jamontae Wallace.  Okay.  He's here because he has relevant testimony to offer to assist you in making your determination as to what happened with this man on July 14th 2002.  What he told you was this man showed him a gun, a revolver, with a scope on it.  This scope or something that certainly looked the same as this scope.  He didn't get that information from Detective Jimenez, he didn't get that information from Detective Schmidt, he didn't get it from me.[103]

Both of these statements were made with respect to the testimony of Jamontae Wallace.

---

[100] *See United States v. Perez*, 144 F.3d 204 (2d Cir. 1998).

[101] *See United States v. Young*, 470 U.S. 1, 18–19 (1985).

[102] Docket No.11-11, p. 134.

[103] Docket No. 11-11, pp. 133–34.

Robinson contends that by making these statements the prosecution was essentially telling the jury that the witness was telling the truth and assured the jury that the information about the evidence didn't come from the police or the prosecutor himself.  Although somewhat inartfully articulated, it appears Robinson is arguing that the prosecutor was vouching for the witness.  The Supreme Court has clearly established that a prosecutor may not vouch for the credibility of a witness.[104]  As Respondent points out, counsel for Robinson called into question the integrity and believability of witnesses; consequently, the prosecutor may rebut.[105]  It is also permissible for a prosecutor to argue that a particular witness is believable or not worthy of belief by referring to evidence in the case.[106]

Although it would have been better form for the prosecutor to have simply referred to the lack of evidence that the district attorney's office had provided the information to Wallace, this Court cannot say that the comment "he didn't get it from me," taken in context and in light of the evidence in the record, was sufficiently egregious to infect the entire trial in violation of due process of law.

**4.  Well, he wouldn't have known that unless he went by the house.  Okay.  Because we had put a security detail there because we were concerned for Mr. Sullivan's safety**.[107]

Robinson contends that the prosecutor interjected himself as a witness and told the jury something that was not put into evidence at trial.  Specifically, that a security detail had been

---

[104] *United States v. Young*, 470 U.S. 1, 18–19 (1985).

[105] *United Sates v. Carr*, 424 F.3d 213, 227 (2d Cir. 2005).

[106] *See United States v. Perez*, 144 F.3d 204 (2d Cir. 1998).

[107] Docket No. 11-11, p. 142.  Counsel objected to this statement.

placed on William Sullivan to protect him from Robinson.  Contrary to Robinson's contention, the fact that a security detail had been placed on Sullivan was in the record by the testimony of William Sullivan and Officer Gilbertson.[108]

While this Court agrees that it was improper for the prosecutor to include the gratuitous statement about concern for the safety of Mr. Sullivan, this Court cannot say that the statement was sufficiently egregious to infect the entire trial in violation of due process of law.

Accordingly, this Court cannot say on the record before it that the decision of the Appellate Division  "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States at the time the state court rendered its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[109]   Robinson is not entitled to relief under his fifth ground.

Ground 6:  Denial of Dues Process/Fair Trial (Cumulative Error).

Robinson argues that, even if separately insufficient to warrant granting relief, the combined effect of the errors amounted to a denial of due process.[110]  Although the issue was presented to the Appellate Division on direct appeal, the Appellate Division did not address the issue in its decision.  Consequently, this Court must decide the issue *de novo* on the record before it, assume that the state court decided the claim on the merits and the decision rested on federal

---

[108] Docket No. 11-10, p. 101 (Sullivan); pp. 126–27 (Gilbertson).

[109] 28 U.S.C. § 2254(d).

[110] *See Taylor v. Kentucky*, 426 U.S. 478, 487 n.15 (1978) ("[C]umulative effect of the potentially damaging circumstances of this case violated the due process guarantee of fundamental fairness."); *United States v. Salameh*, 152 F.3d 88, 157–58 (2d Cir. 1998).

grounds, and give the assumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[111]

As this Court has determined, with the exception of the failure to request a limiting instruction on the uncharged crime testimony, no errors occurred, or such errors were *de minimis*, this Court cannot hold that the combined or cumulative effect of the alleged errors violated the due process guarantee of fundamental fairness.  Accordingly, this Court cannot say on the record before it that the assumed decision of the Appellate Division  "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States at the time the state court rendered its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[112]

## V.  CONCLUSION AND ORDER

Except for the failure of counsel to request a limiting instruction on the testimony of Elisha Kimbrough and a new trial on Count Seven of the indictment,  Robinson is not entitled to relief on any ground raised in his petition.

**IT IS THEREFORE ORDERED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **GRANTED** in part, and **DENIED** in part.

**IT IS FURTHER ORDERED THAT** unless the People retry Robinson on Count Seven of the Indictment "Bribing a Witness" (N.Y. Penal Law § 215.00) within a reasonable time,

---

[111] *See* discussion, *ante*, p. 5.

[112] 28 U.S.C. § 2254(d).

consistent with the New York speedy trial law, Robinson's sentence must be redetermined without regard to the conviction on that count.

**IT IS FURTHER ORDERED THAT**, to the extent that the petition is denied, the Court declines to issue a Certificate of Appealability.[113]  To the extent the issues raised in the petition were addressed by the Appellate Division, Third Department, no reasonable jurist could find that the decision was "objectively unreasonable."  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* Fed. R. App. P. 22(b); Second Circuit R. 22.

The Clerk of the Court is to enter final judgment accordingly.

Dated:  November 17, 2009.

/s/ James K. Singleton, Jr.

JAMES K. SINGLETON, JR.
United States District Judge

---

[113] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks omitted).